```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EDITH RICHMOND,                           :
                                          :       **MEMORANDUM AND ORDER**
                        Plaintiff,        :       12-CV-1319 (DLI)(VMS)
                                          :
            -against-                     :
                                          :
NATIONAL GRID and US ENERGY SAVINGS       :
D/B/A JUST ENERGY OF NEW YORK,            :
                                          :
                        Defendants.       :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Edith Richmond ("Plaintiff") brings this action against US Energy Savings d/b/a Just Energy of New York ("Just Energy") and Brooklyn Union Gas Company d/b/a National Grid NY ("National Grid") for damages arising from Plaintiff's natural gas supply agreement with Just Energy. Specifically, Plaintiff contends that Just Energy made fraudulent misrepresentations with respect to pricing and Plaintiff's ability to terminate her commercial supply agreement with the company. Plaintiff also alleges that her natural gas account with Just Energy was subsequently transferred to National Grid, who then improperly commenced a collection action against Plaintiff to recover unpaid fees on the account. National Grid moves to dismiss all of the claims asserted against it pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1] (Docket Entry No. 3.) Plaintiff opposes. For the reasons set forth below, National Grid's motion is granted.

## BACKGROUND

The following facts are taken from Plaintiff's complaint, which are assumed true for the

---

[1] Just Energy answered Plaintiff's complaint, but has not moved to dismiss the claims asserted against it. (Docket Entry No. 18.)

purposes of this motion. Plaintiff is the sole proprietor of a laundromat located at 1008 Rutland Road, Brooklyn, New York. (Compl. ¶¶ 3, 16, Docket Entry No. 1.) On or about March 21, 2009, Alex Baptiste and Jason Johnson, acting on behalf of Just Energy, visited the laundromat and allegedly made material misstatements to induce Plaintiff to enter into natural gas supply agreements with Just Energy. (Compl. ¶¶ 18-20.) Specifically, Baptiste assured Plaintiff that she would save money on her natural gas bill by switching to Just Energy. (Compl. ¶ 19.) Baptiste also told Plaintiff that she had the option, after receiving her first bill, to cancel the arrangement, if Just Energy's pricing did not result in savings. (Compl. ¶ 20.)

After speaking with Baptiste and Johnson, Plaintiff signed two agreements with Just Energy: a residential contract, applicable to residential and small business customers (the "Residential Agreement"), and a commercial contract, applicable to commercial customers (the "Commercial Agreement"). (Compl. ¶ 23; Ex. 2.) The Residential Agreement expressly provided that Plaintiff had the right to cancel her residential account within thirty days from the date of her first bill to avoid an exit fee. (Compl. ¶ 31, Ex. 2.) In contrast, the Commercial Agreement stated that Plaintiff must cancel her commercial account within three days of signing the agreement to avoid an exit fee. (Compl. ¶ 32, Ex. 2.) Plaintiff alleges that Baptiste and Johnson never informed Plaintiff of the differences between the Commercial Agreement and Residential Agreement or the consequences of the Commercial Agreement's exit fee clause. (Compl. ¶ 31.)

Later in 2009, Plaintiff gave Just Energy notice that she wished to cancel the Commercial Agreement, although the precise date of the notice is not specified in the complaint. Thereafter, on July 6, 2009, Just Energy informed Plaintiff that she would be charged an exit fee of approximately $8226.34 for cancellation of the Commercial Agreement. (Compl. Ex. 7.) On

August 10, 2009, Plaintiff's then-attorney, Yvette Dudley, sent a letter to Just Energy on Plaintiff's behalf indicating that Plaintiff "rejected" the $8226.34 exit fee, and would instead tender $330.00 to resolve the matter; the letter also stated that "[n]o further monies are forthcoming" from Plaintiff. (Compl. Ex. 5.)

After charging the exit fee to Plaintiff's commercial account, Just Energy transferred the account to National Grid. (Compl. ¶ 34.) In connection with the transfer, National Grid paid Just Energy the full amount of the exit fee. (Compl. ¶ 35.) National Grid then added the exit fee to Plaintiff's account, but purportedly did not verify if Plaintiff actually owed the fee. (Compl. ¶ 36.) Plaintiff alleges that, throughout the process, National Grid "did not inform [her] that she could dispute the alleged exit fee amount . . . while continuing to pay the undisputed portion of her monthly utility bill." (Compl. ¶ 37.)

On May 5, 2010, Plaintiff sent a letter to National Grid's legal counsel stating, "Please be aware I am disputing these charges because [Just Energy] has billed my account for charges unrelated to the usage of gas. . . . As a result of these disputes[,] I am not willing to settle my account until this matter has been cleared." (Compl. Ex. 5.) Later that month, on May 19, 2010, National Grid commenced a collection action against Plaintiff in the Civil Court of the City of New York, Kings County. (Compl. ¶ 37, Exs. 6, 7.)

Plaintiff, who alleges that Just Energy's actions are harmful to the public at large, attaches to the complaint a press release, dated July 14, 2008, which reports that Just Energy entered into a settlement agreement with the New York State Attorney General following an investigation into whether the company's "sales personnel deceived Western New York customers into entering into service contracts and paying more for services." (Compl. ¶¶ 25, 41; Ex. 3.) According to the press release, "[Just Energy's] agreements allowed consumers the right

to cancel service within three business days, but that period expired long before consumers received their first bill (usually between 30 and 60 days). When consumers, surprised by the increase in their gas bills, sought to cancel their agreement beyond the three-day window, [Just Energy] required that they pay a termination fee that equaled $600 or more." (Compl. Ex. 3.) Under the terms of the settlement agreement, Just Energy agreed to waive hundreds of thousands of dollars in residential customer termination fees, pay $200,000 in costs and penalties to the state, and implement a series of comprehensive reforms to ensure that customers are given accurate, up-front information regarding service agreements. (*Id.*)

On March 16, 2012, Plaintiff commenced this action against Just Energy and National Grid and asserted claims against both entities for: (1) misleading advertising in violation of New York General Business Law § 350; (2) deceptive acts and practices in violation of New York General Business Law § 349; (3) unjust enrichment; (4) fraudulent misrepresentation; (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c) based on underlying claims of mail and wire fraud; and (6) RICO conspiracy under 18 U.S.C. § 1962(d). National Grid moves to dismiss Plaintiff's claims against it pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, but takes no position on the adequacy of Plaintiff's claims against Just Energy. (Mem. of Law of Def. in Supp. of Mot. to Dismiss at 3, Docket Entry No. 5.)

## DISCUSSION

### I. Legal Standard

Rule 12(b)(6) states that, in lieu of an answer, a defendant may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether dismissal pursuant to Rule 12(b)(6) is appropriate, "a court must accept as true all [factual] allegations contained in a complaint," but need not accept "legal

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted).[2]

## II. Analysis

    a. New York Consumer Protection Claims

        *i. Section 350*

Section 350 of New York General Business Law provides, in relevant part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350. "To state a cause of action for false advertising under this section, a plaintiff must . . . allege that 'the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury.'" *Prue v. Fiber Composites, LLC*, 2012 WL 1314114, at *7 (E.D.N.Y. Apr. 17, 2012) (quoting *DeAngelis v. Timberpeg E., Inc.*, 51 A.D.3d 1175, 1177 (3d Dep't

---

[2] Where matters outside the pleadings are presented in connection with a Rule 12(b)(6) motion, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citation and internal quotations omitted). Here, although the parties have submitted various affidavits and documents not referenced in or otherwise incorporated in Plaintiff's complaint, the Court sees no reason to convert National Grid's motion to a motion for summary judgment. Thus, the Court will only consider the factual allegations set forth in Plaintiff's complaint and the legal arguments raised in the parties' briefs.

2008)). A plaintiff bringing a claim under Section 350 must also demonstrate reliance on the allegedly false advertisement. *Id.*

Plaintiff's false advertising claim against National Grid must be dismissed because the complaint fails to identify *any* advertisements or promotional material disseminated by National Grid, let alone misleading ones that she relied on. *See Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *15 (S.D.N.Y. Dec. 16, 2011) (dismissing false advertising claim where "[p]laintiffs d[id] not identify any false or misleading advertisement or plead any reliance on any such advertisement"); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) ("[Reliance] [t]ypically . . . means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she relied." (quoting *Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 9 (1st Dep't 1998), *aff'd*, 94 N.Y.2d 43 (1999))). Indeed, all of the purportedly misleading advertisements identified in and attached to the complaint originate from Just Energy, not National Grid. (Compl. ¶¶ 49-56, Ex. 6.)

Remarkably, without ever alleging that she relied on a National Grid advertisement, Plaintiff still insists she should be granted leave to obtain discovery to acquire "the necessary evidence to prove her [Section] 350 claim." (Mem. of Law of Pl. Edith Richemond in Opp'n to Def.'s Mot. to Dismiss ("Pl. Mem.") at 17, Docket Entry No. 10.) Plaintiff's request is meritless under these circumstances. *See Small*, 252 A.D.2d at 17 ("Plaintiffs cannot simultaneously assert that they were deceived by affirmative misrepresentations and that the identity of such misrepresentations is unknowable.").

Accordingly, Plaintiff's false advertising claim against National Grid is dismissed.

    ii.    *Section 349*

Section 349 of New York General Business Law provides, in relevant part, "[d]eceptive

6

acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. To assert a claim under Section 349, a plaintiff must show that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "'[P]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute.'" *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995)).

Plaintiff's allegations against National Grid do not meet the first element because the complaint fails to identify any acts by National Grid that "have a broader impact on consumers at large." *Prue*, 2012 WL 1314114, at *7 (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532); *see also Fitzgerald v. Chase Home Fin., LLC*, 2011 WL 9195046, at *8 (S.D.N.Y. Feb. 28, 2011) ("[F]or a Section 349 claim to arise out of a private transaction, '[the] disputed private transaction must have ramifications for the public at large, or be harmful to the general public interest.'" (quoting *Ng. v. HSBC Mortg. Corp.*, 2010 WL 889256, at *15 (E.D.N.Y. Mar. 10, 2010))) (internal quotation marks omitted). Although the complaint alleges that Just Energy broadly engaged in misleading sales tactics that have been "the subject of hundreds of complaints by other customers in the state of New York" (Compl. ¶ 24), it does not claim that National Grid had any involvement in those acts. Instead, Plaintiff's allegations against National Grid demonstrate, at best, a private dispute unique to Plaintiff's interests. For instance, the complaint offers no details about National Grid's actions in the collection suit or its management of her natural gas account from which a broader impact on consumers could be inferred. Nor is there any allegation that National Grid treated or targeted

7

other consumers in a similar manner, or that its actions against Plaintiff were the result of the company's broad practices or policies.

Plaintiff also does not satisfy the second element because she fails to sufficiently allege that National Grid took actions "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Maurizio*, 230 F.3d at 522 (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26). As a preliminary matter, the complaint fails to identify any affirmatively misleading conduct by National Grid. Furthermore, even though the complaint alleges that National Grid did "not inform [Plaintiff] that she could dispute the alleged exit fee amount on her utility bill while continuing to pay the undisputed portion" (Compl. ¶ 37), it provides no detail or context to allow for the inference that the omission would likely mislead a reasonable customer. *See Milich v. State Farm Fire & Cas. Co.*, 2013 WL 906501, at *2 (2d Cir. Mar. 12, 2013) ("Section 349 does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.") (citation and internal quotations omitted).

For these reasons, Plaintiff's claim against National Grid pursuant to Section 349 is dismissed.

b. Fraudulent Misrepresentation

Under New York law, to state a claim for fraudulent misrepresentation, a plaintiff must allege that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 400 (2d Cir. 2001) (citation and internal quotation omitted). Where a plaintiff seeks to show fraud by omission, it must also prove that the defendant had a duty to disclose the

concealed fact. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

For allegations of fraud, which are subject to the heightened pleading standards of Rule 9(b), a complaint must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd., v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). Moreover, "[e]ven if the alleged fraud consisted of omissions, making plaintiff 'unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud.'" *Grandy v. BAC Home Loan Servicing, LP*, 2012 WL 1118039, at *8 (E.D.N.Y. Mar. 30, 2012) (quoting *Cohain v. Klimley*, 2010 WL 3701362, at *20 (S.D.N.Y. Sept. 20, 2010)).

Plaintiff's fraudulent misrepresentation claim must be dismissed in light of Plaintiff's failure to satisfy the heightened pleading standards of Rule 9(b). As noted above, the complaint identifies no affirmative misrepresentations by National Grid. It does, however, identify one purported omission: National Grid's failure to "inform [Plaintiff] that she could dispute the alleged exit fee amount on her utility bill while continuing to pay the undisputed portion." (Compl. ¶ 37.) Yet the complaint provides no detail as to the context of the purported omission and the manner in which it misled Plaintiff. Moreover, assuming, *arguendo*, that the omission is a material one, Plaintiff's allegations are deficient as a matter of law because the complaint fails to allege that Plaintiff relied on the omission, or that she suffered damages as a result of it. *See*

*Manning*, 254 F.3d at 401.

In her opposition brief, Plaintiff claims that a letter sent by National Grid (and attached as an exhibit to the complaint) contains an affirmative misrepresentation about the transfer of her account from Just Energy. (Pl. Mem. at 19-20.) In the letter, dated April 29, 2009, National Grid informed Plaintiff that, effective June 1, 2009, Just Energy would stop supplying Plaintiff with natural gas. (Compl. Ex. 7.) Plaintiff claims that this representation was misleading because a separate document, specifically, Plaintiff's "Account Running Balance Statement," shows that Plaintiff's natural gas account was not actually transferred to National Grid until October 5, 2009.[3] (Pl. Mem. at 19-20.) As National Grid notes, and the Court agrees, the purported misrepresentation appears to be the result of Plaintiff misreading her own documentation: the April 29, 2009 letter refers to Plaintiff's *residential account* (Account No. 03415-26920), whereas the Account Running Balance Statement refers to Plaintiff's separate *commercial account* (Account No. 03415-26912). (Compl. Exs. 2, 6, 7.) In any event, because Plaintiff did not include this allegation in her complaint, the Court need not consider it in resolving the instant motion. *See Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading for purposes of Rule 12(b)."); *Dexia SA/NV v. Deutsche Bank AG*, 2013 WL 98063, at *6 (S.D.N.Y. Jan. 4, 2013) ("[P]laintiffs must allege [fraud] with particularity in the Complaints; they cannot simply assert that this is the case in their brief.").

Thus, Plaintiff's fraudulent misrepresentation claim against National Grid is dismissed.

---

[3] Plaintiff does not claim in her brief that she relied on this representation or that she suffered damages as a result of her reliance. (Pl. Mem. at 19-20.)

    c.    Unjust Enrichment

Under New York law, a claim for unjust enrichment requires a plaintiff to establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation and internal quotation marks omitted). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906 (4th Dep't 1999)).

As a preliminary matter, Plaintiff's claim against National Grid fails because the complaint does not allege that Plaintiff paid money to National Grid to satisfy the exit fee. *See Jaffe v. Capital One Bank*, 2010 WL 691639, at *8 (S.D.N.Y. Mar. 1, 2010) (dismissing unjust enrichment claim where complaint "ma[de] conclusory allegations about the imposition of penalties and late fees, [but] fail[ed] to allege that [Plaintiff] ever actually paid any money to Defendants that was not in satisfaction of his own credit card debt"); *Fitzgerald*, 2011 WL 9195046, at *7 (dismissing unjust enrichment claim where "Plaintiffs claim[ed] that Defendants attempted to collect penalties, fees, and interest unjustly, [but] the Complaint [was] silent as to whether Plaintiffs paid Defendants any money"). Indeed, two letters attached as exhibits to the complaint suggest that, to date, Plaintiff has refused to pay National Grid for any portion of the fee.[4]

---

[4] In the first letter, dated August 10, 2009, Plaintiff's then-attorney indicated that Plaintiff tendered $330.00 to Just Energy (not National Grid) to satisfy the exit fee; the letter also states that [n]o further monies are forthcoming" from Plaintiff. (Compl. Ex. 5.) In a second letter, dated May 5, 2010, Plaintiff informed National Grid that, due to the exit fee dispute, she "[was] not willing to settle [her] account until this matter has been cleared." (*Id.*)

11

Moreover, assuming, *arguendo*, that Plaintiff, in fact, has already made payments to National Grid to satisfy the exit fee, Plaintiff's allegations still fail to show that equity and good conscience would require restitution from National Grid. In particular, Plaintiff does not allege that National Grid was involved with or knew about the purported misrepresentations that gave rise to her claim against Just Energy or that National Grid received an overall profit or benefit from Just Energy's marketing scheme and exit fee provisions. Instead, Plaintiff's allegations, taken as true for the purposes of this motion, suggest that Just Energy independently carried out the purportedly deceptive sales scheme and retained the entire profit from it. *See Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 517 (S.D.N.Y. 2012) (finding plaintiff failed to show equity and good conscience to support unjust enrichment claim absent allegations that defendant knew of or conspired to carry out underlying misconduct); *DeSouza v. Andy Frain Servs., Inc.*, 2012 WL 3245496, at *4 (S.D.N.Y. Aug. 6, 2012) (finding plaintiff did not assert viable unjust enrichment claim where he failed to allege that defendants deceived him concerning proposed employment contract).

Accordingly, Plaintiff's unjust enrichment claim against National Grid is dismissed.

d. RICO

  i. *Section 1962(c)*

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). In order to bring suit under § 1964(c), a plaintiff must show: "(1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property; and (3) that such injury was by reason of the substantive RICO violation." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (citation and internal quotation marks omitted). Here, as to the first element, Plaintiff

relies on Section 1962(c), which provides that an underlying violation of RICO occurs when "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, . . . conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

"Racketeering activity" is defined to mean any of a list of state and federal crimes including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). To state a viable claim for mail and wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of [wire or mail] communications in interstate commerce in furtherance of the scheme." *Chanayil v. Gulati*, 169 F.3d 168, 170-71 (2d Cir. 1999). "[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of [Rule] 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004) (citations and internal quotations omitted). "In addition to alleging the particular details of a fraud, 'the plaintiff[] must allege facts that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999)).

Here, Plaintiff's substantive RICO claim against National Grid fails, because, among other things, Plaintiff fails to plead with particularity the content of National Grid's communications in furtherance of the purported fraud, and the connection, purpose, and role of those communications within the scheme. Simply put, the complaint's formulaic assertions that "National Grid . . . deliver[ed] information . . . that was directly related to the fraudulent scheme," (Compl. ¶¶ 80-85), are conclusory to the extreme and insufficient under Rule 9(b). *See Moore*, 189 F.3d at 173.

In her opposition brief, Plaintiff attempts to salvage this claim and suggests, once again in a conclusory and speculative fashion, that National Grid committed mail fraud by sending Plaintiff consolidated billing statements with "excessively high prices" and transmitting Plaintiff's payments on a monthly basis. (Pl. Mem. at 12-13.) However, Plaintiff does not describe with specificity the purpose and role of these actions in carrying out the purported fraud. Moreover, under these circumstances, it is unclear how the monthly billing statements would further the underlying fraudulent scheme. If anything, the mailing of billing statements with excessive pricing likely provided the impetus for this lawsuit by exposing the purported fraud and "'increas[ing] the probability that [Defendants] would be detected and apprehended.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, --- F.3d ---, 2013 WL 765117, at *10 (2d Cir. Mar. 1, 2013) (finding that employer's "mailing of pay stubs cannot further the fraudulent scheme [against employees] because the pay stubs would have revealed (not concealed) that Plaintiffs were not being paid for all of their alleged compensable overtime") (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974))). Nonetheless, because Plaintiff did not include this allegation in her complaint, it need not be considered on this motion. *See Fonte*, 848 F.2d at 25; *Dexia SA/NV*, 2013 WL 98063, at *6.

For these reasons, Plaintiff's substantive RICO claim against National Grid is dismissed.

    *ii.    Section 1962(d)*

To establish a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d), a plaintiff must demonstrate that each defendant "knew about and agreed to facilitate" a pattern of racketeering activity. *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (quoting *Salinas v. United States*, 522 U.S. 52, 66 (1997)). "A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that

he adopt the goal of furthering or facilitating the criminal endeavor.'" *Id.* at 376-77 (quoting *Salinas*, 522 U.S. at 65). At the pleading stage, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25, 26 n.4 (2d Cir. 1990).

Here, the complaint's boilerplate statements that National Grid "conspired to engage[] in a pattern of racketeering activity" and "knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through [a] pattern of racketeering activity" (Compl. ¶¶ 92, 104) are unsupported by well-pleaded facts. For instance, as previously discussed above, the complaint does not allege that National Grid authorized, facilitated, or promoted Just Energy's purportedly deceptive sales tactics, or that National Grid depended on the scheme or derived any benefit from it, directly or otherwise. The complaint is also devoid of other potentially relevant facts—including, for instance, details on the relationship between National Grid and Just Energy and the circumstances of Just Energy's transfer of Plaintiff's natural gas account to National Grid—that might support the inference that a conscious agreement existed between the two entities.

Therefore, Plaintiff's RICO conspiracy claim against National Grid is dismissed.

## CONCLUSION

For the reasons stated above, National Grid's motion to dismiss is granted and all claims asserted against it in this action are dismissed.

SO ORDERED.

Dated: Brooklyn, New York
   March 29, 2013

                _____/s/_____
                DORA L. IRIZARRY
                United States District Judge